This action involves the final account of Louis J. Warkenthien, the executor of the estate of Charles Fisher, deceased, who died in Clark County on March 23, 1925. The executor qualified on April 28, 1925, by filing a bond signed by the Western Surety Company in the penal sum of $75,000. This bond remained in effect until December 11, 1926, at which time the Western Surety Company was relieved as surety and a new bond furnished by the executor. The final report was filed by the executor on January 26, 1935, and objections were filed by heirs of the deceased. The report came on for hearing. The executor, the various heirs, and the Western Surety Company all appeared and were represented by counsel. The County Court, following the hearing, surcharged the executor with the sum of $26,271.70 and the executor and the Western Surety Company appealed to the Circuit Court of Clark County. After a hearing in Circuit Court the judge filed an opinion wherein he indicated that it was his judgment that the amount charged to the executor by the County Court should be greatly reduced and found that the Western Surety Company was not liable on its bond, it being the opinion of the Circuit Judge that the liability of the executor was incurred following the time the Surety Company bond *Page 486 
was released. The Surety Company presented to the Circuit Court findings of fact and conclusions of law which were signed and filed and thereafter judgment was entered absolving the Surety Company from all liability. However, no judgment was entered by the Circuit Court determining the liability of the executor. Hon. W.N. Skinner, the judge before whom the action was heard, died shortly thereafter and as a result there was never any judgment entered in this action determining the liability of the executor. From the time of the hearing before Judge Skinner and after the entering of the judgment absolving the Surety Company, no further action was taken until the 15th day of August, 1939, at which time the objecting heirs filed an application in the Circuit Court of Clark County asking that the action be restored to the calendar for retrial upon the merits on the grounds that Judge Skinner had died without ever determining the liability of the executor. The action was then retried and reheard before Hon. W.W. Knight commencing on the 29th day of October, 1939. Appearances were noted on behalf of objecting heirs and the executor. Judge Knight thereafter entered his findings of fact, conclusions of law, and judgment which surcharged the executor with $27,566.76, and concluded as a matter of law that the judgment absolving the Western Surety Company entered by Judge Skinner, was of no force or effect. The executor and the Surety Company have now appealed to this court from the judgment entered by Judge Knight and from his order denying an application for a new trial which application was made by the Western Surety Company.
The liability of the executor, found by the Circuit Court, is predicated upon findings of fact substantially as follows:
Mr. Fisher, the deceased, was a stockholder and Vice President of the Security State Bank of Willow Lake. At the time of his death he had on deposit in that bank the sum of $37,820.00 represented by certificates of deposit. Paragraph 9 of the Fisher will provided:
"Now all the balance of my property which is personal property and consists at this time of over $30,000.00, is to be *Page 487 
created into a Trust Fund and I so create it as a trust fund to be handled by the Security State Bank, of Willow Lakes, as Trustee, and I hereby appoint it as trustee to handle said personal property, and it is required to execute a sufficient bond as trustee. And said trust fund is to be administered by them and is considered to be in four equal parts and each of my four sons above named are to be the recipients in equal parts of said trust fund, to be given to them twenty years after they arrive at the age of twenty-one years, that is, each is to receive his equal part twenty years after he becomes twenty-one years old, but the income of each of said parts is to be paid to each of them each year or to their guardian. And said trustee must make annual reports to the County Court of Clark County, South Dakota, and such trustee is also to be trustee over the land that each of said sons are to receive the same as over the personal property."
The executor, Warkenthien, was the cashier and managing officer of the Security State Bank of Willow Lake. At the time of the appointment of Mr. Warkenthien as executor of the estate, there was entered by the County Court, an order purporting to authorize the executor to continue on deposit in the Security State Bank, the monies belonging to said estate, which order is as follows:
"Louis J. Warkenthien, having been named in the will of said deceased as the Executor thereof, and he having been appointed as such executor by this court and having duly qualified as such by taking the oath of office and presenting and filing in this court his bond as such Executor in the sum of $75,000.00 same having been executed by the Western Surety Company of Sioux Falls, South Dakota, as surety, and said bond having been approved by this Court on the 28th day of April, 1925.
"And it appearing from the petition presenting said Will for probate that there was considerable money cash on hand belonging to said deceased, and it also appearing from the testimony produced in the hearing thereon that there was monies and securities aggregating $40,000.00 or more *Page 488 
belonging to said estate, and there would likely be about that much in the hands of the Executor during his administration thereof, and that said monies and securities were now and had been for several years deposited in the Security State Bank of Willow Lake, South Dakota, of which the said deceased was a stockholder and it also appearing from the testimony that said bank is now and has been through the long-time depression prevailing throughout the Northwest in good financial condition and sound.
"Therefore it is hereby ordered that said Executor continue on deposit in said Bank the said monies and securities belonging to said estate, and said Bank is hereby designated as a depository for said funds and any other funds that may come into the hands of said Executor for said estate, from time to time."
The Security State Bank had never qualified to act as a trustee under the laws of the state of South Dakota and there was no attempt made to qualify it as such trustee or to comply in any manner with the provisions of the will regarding the appointment of a trustee. The executor continued to carry the money on deposit in the Security State Bank in its original form until January 19, 1926, at which time he surrendered the original certificates and had issued to himself as executor of the estate, five other certificates of deposit of the Security State Bank, which totaled $35,020 and placed on checking account, for the benefit of the estate, the sum of $4,582.61. The certificates were due in six or twelve months. On April 30, 1927, the certificates of deposit were surrendered to the bank and four savings accounts carried in the name of the Fisher Estate and the four sons of the deceased, were set up in the bank and these accounts were carried in that form by the executor until the Security State Bank was merged with the Farmers and Merchants Bank of Willow Lake on October 1, 1929, at which time similar accounts in favor of each of the four sons were carried in the Farmers and Merchants Bank. The Farmers and Merchants Bank failed in July, 1931, at which time there remained on deposit in that bank, the sum of $16,129.31. The difference between this latter figure and *Page 489 
the amount as originally deposited was withdrawn by the executor from the bank and with the exception of the following items was used for the benefit of the estate and the beneficiaries thereof. The items which the Trial Court found were not used for the benefit of the estate were as follows:
On October 15, 1927, the executor withdrew $2,800 of estate funds for the purpose of paying an assessment upon 28 shares of the capital stock of the Security State Bank of Willow Lake owned by the Charles Fisher estate; on various dates following September 12, 1930, the executor loaned to relatives of his, monies of the estate in the amount of $3,943.75; and following May 5, 1931, the executor paid to himself fees to which he was not entitled, in the amount of $430.70.
Following the merger of the Security State Bank with the Farmers and Merchants Bank, Mr. Warkenthien became a stockholder in the Farmers and Merchants Bank and was elected Vice President thereof and acted in that capacity for a period of three months following the merger, at which time he severed his connections with the said bank and ceased to be a stockholder therein. The Trial Court found further that at all times following the appointment of Mr. Warkenthien as executor of the estate, the Security State Bank of Willow Lake was insolvent and that at the time of the merger of the two banks, the Farmers and Merchants Bank was insolvent and continued to be insolvent until the time it closed in July, 1931. The court found that the insolvency of the two banks was both constructive and actual.
The amount of the liability of the executor was determined by the Trial Court in substantially the manner as follows:
The court found and held that on January 19, 1926, when the executor surrendered to the bank the original certificates of deposit and accepted, in lieu thereof, other certificates and a bank credit in the form of a checking ac-acount that such acts "constituted a breach of duty of said *Page 490 
executor and made him liable as executor for said funds less those thereafter accounted for by him." The liability of the executor was therefore fixed as of January 19, 1926, in the total sum of $39,602.61. The Trial Court then proceeded to credit the executor with any funds which had been withdrawn from the bank and used for the benefit of the estate, which amounted to $16,604.45. The funds in the bank had also drawn interest at the rate of 4% and 5% and the Trial Court allowed to the executor the difference between the rate drawn and the rate of 3.80% which estate funds would have drawn had they been invested in United States government securities. The executor was allowed the further credit of amounts received by dividends in the liquidation of the Farmers and Merchants Bank. On the basis set out above, the Trial Court determined that the liability of the executor amounted to the sum of $27,566.76, as of the date the judgment was entered.
[1, 2] We have considered the mass of evidence submitted bearing on the question of insolvency of the banks. A review of this evidence would serve no useful purpose and would extend this opinion beyond any reasonable length. The evidence in our opinion sustains the findings upon this issue and we therefore start with the premise that at all times material the Security State Bank and the Farmers and Merchants Bank were insolvent in fact. The Trial Court found further that the executor, Warkenthien, knew of the conditions of the banks and this finding is supported by the evidence. The law is well established in this state that the deposit of trust funds in a bank by a trustee who knows the bank is insolvent, constitutes a breach of duty by the trustee and renders the trustee liable for any resulting loss. In re Hogness' Guardianship, 56 S.D. 286, 228 N.W. 379; In re Taylor's Estate,58 S.D. 365, 236 N.W. 365; Onida Independent School District No. 1 v. Groth et al., 53 S.D. 458, 221 N.W. 49; Independent School District of Lake Andes v. Scott et al., 51 S.D. 187, 212 N.W. 863; Independent School District of City of Brookings v. Flittie et al., 54 S.D. 526, 223 N.W. 728. However, it seems clear to us that all of the above cited cases establish the rule that the *Page 491 
amount of the liability of the trustee because of depositing trust funds in an insolvent bank knowing the bank to be insolvent, is determined by the loss resulting therefrom. Any loss resulting to the estate occasioned by acts of the trustee other than making a deposit in an insolvent bank, should not be included in determining the amount of liability of a trustee arising from this cause. In other words, it cannot be said that the executor Warkenthien caused a loss to this estate by depositing estate funds in an insolvent bank when he actually withdrew these funds from the bank and lost them to the estate because of some other unauthorized act. We are of the opinion, therefore, that the Trial Court was in error in determining the amount of loss as of January 19, 1926, and by proceeding to credit the estate with funds thereafter used for the benefit of the estate. In this case the loss resulting from keeping on deposit the estate funds in insolvent banks was not determined until the Farmers and Merchants Bank closed, at which time there was on deposit in that bank, estate funds in the amount of $16,129.31. Whether it could be said that this loss resulted in whole or in part from the acts of the executor back in 1926 depositing the funds in the Security State Bank, knowing that bank to be insolvent, we do not believe it necessary to decide in this case. The present facts disclose a continuing violation of the duty of the executor commencing at the time of the first deposit in the insolvent bank and continuing throughout the time the deposits were maintained in the banks and until the Farmers and Merchants Bank closed in 1931, at which time the loss occasioned by this violation of duty was finally fixed and determined, subject of course to any dividends paid by the closed bank. We are therefore of the opinion that the Trial Court adopted a wrong theory in settling the account of this executor and that the action should be remanded to the Trial Court to fix the liability under the present record by determining the amount of loss that occurred to the estate by each of the acts of the executor which the Trial Court determines was unauthorized.
[3] Under the reasoning of this court in the case Independent *Page 492 
School District of City of Brookings v. Flittie, supra, the designation of the depository by the County Court, would not justify the executor, who knew of the bank's condition, in continuing the deposit in the insolvent bank, and in any event the order of the County Court did not extend to the Farmers and Merchants Bank where the money was on deposit when that bank closed.
[4, 5] It is earnestly urged by the Surety Company upon this appeal that it was error for the Trial Court to conclude that in the prior hearing on appeal to the Circuit Court, wherein Judge Skinner presided, the court was without jurisdiction to render judgment absolving the Surety Company from any liability. However, we are convinced that the present conclusion of the Trial Court must be sustained. We think it clear that under the provision of § 20, Art. V of the Constitution of this state, the County Court had no jurisdiction to adjudicate the liability of the Surety Company under its bond. The County Court being without jurisdiction, no jurisdiction to determine the liability of the Surety Company is acquired by the Circuit Court upon the appeal from the County Court. This court has recently held as follows:
"Although the circuit court is a court of general jurisdiction, it exercises on appeals from the county court a limited jurisdiction, and it is not authorized to determine controversies not within the jurisdiction of the county court." In re Sachs' Estate, 297 N.W. 793, 795, 68 S.D. 18.
In the case of Shaw et al. v. Shaw, 28 S.D. 221, 133 N.W. 292, 294, Ann. Cas. 1914B, 554, this court said: "The provision in section 359 [now SDC 35.2111.] that, in the circuit court, the case shall be tried de novo as if it had originated in that court, does not invest the circuit court with any new or additional jurisdiction not possessed by the county court. The circuit court for the time being and for the purposes of that trial is exercising probate jurisdiction, brought by means of the appeal, from the county to the circuit court." See, also, In re Skelly's Estate, 21 S.D. 424, 113 N.W. 91. *Page 493 
While there is some language in the case of State v. Nieuwenhuis et al., 49 S.D. 181, 207 N.W. 77, apparently contrary to the above holdings such language was not necessary to a decision in that case. The question there involved was the right to a jury trial in an action to establish a lost will. It was held, and we concur, that such an action is one within the function of equity, and that it is not within the power of the legislature to deprive equity of this jurisdiction. This case was followed by the case of In re Lansing's Estate, 51 S.D. 615, 216 N.W. 353, which held that a will contest was essentially of equity jurisdiction and the legislature was without power to deprive equity of this jurisdiction. Neither of these later cases referred to the prior decisions of Shaw et al. v. Shaw, supra, or In re Skelly's Estate, supra, and since both the Nieuwenhuis and Lansing cases could be decided upon the sole question of the power of the legislature to deprive equity of a recognized jurisdiction, we conclude that in neither of these later cases was it intended to overturn the established law upon the question of the extent of the jurisdiction of the circuit court when hearing an appeal from county court. We are not inclined to disturb the holding of this court in the Shaw and Skelly cases which we so recently approved in the case of In re Sachs' Estate, supra.
We are convinced, therefore, that the judgment entered by the Circuit Court in favor of the Surety Company of the prior hearing, was not within the jurisdiction of the Circuit Court when sitting in an appeal taken from the County Court and that the judgment entered was void and subject of being so declared in this proceeding.
The record in this case is voluminous and the briefs are extensive, however it appears that much of the record and argument is concerned principally with the liability of the Surety Company. We have held that this question was not before Judge Skinner and by the same token this question is not before us on this appeal. The case comes to this court upon the account rendered by the executor. For the reasons stated we are convinced that the Trial Court pursued an improper method in settling the account. The *Page 494 
account rendered by the executor should be surcharged with any loss resulting to the estate from any unauthorized act of the executor. This determination should be made by the Trial Court in the first instance, and no reason appears why it should not be made upon the present record. The judgment and order appealed from are, therefore, reversed with directions to settle the account of the executor as indicated herein. We are of the opinion that other questions argued and presented are not material in view of the above holding.
The judgment and order appealed from are reversed with directions as above indicated.
All the Judges concur.